No. 23-20066

# In the United States Court of Appeals
# For the Fifth Circuit

_____

RALPH EADS; PRINCESS ALIA, L.L.C.,
*Plaintiffs - Appellants*,

v.

SPHERIC ASSURANCE COMPANY, LIMITED,
*Defendant - Appellee.*

---

## BRIEF OF DEFENDANT - APPELLEE

---

On Appeal from the U.S. District Court for the
Southern District of Texas – Houston Division
USDC No. 4:22-CV-04021

---

Michael J. Ritter
State Bar No. 24074960
mritter@sr-llp.com
SCHMOYER REINHARD LLP
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
PH: (210) 447-8033
FX: (210) 447-8036

Daisy Khambatta
Texas Bar No. 24029654
daisy.khambatta@kennedyslaw.com
Candace A. Ourso
Texas Bar No. 24008952
candace.ourso@kennedyslaw.com
KENNEDYS, CMK LLP
3821 Juniper Trace, Suite 101
Austin, Texas 78738
T: (512) 359-8821
F: (512) 359-8830

*Attorneys for Defendant - Appellee*

## <u>Certificate of Interested Persons</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.   Ralph Eads, III – *Plaintiff-Appellant*

2.   Princess Alia, LLC – *Plaintiff-Appellant*

3.   Spheric Assurance Company, Ltd. – *Defendant-Appellee*

4.   Global Insurance Group Holding Company, Inc. – *Parent company of Defendant-Appellee*

5.   Hicks Thomas LLP (Gregg C. Laswell, J. Stephen Barrick, and Elizabeth Larson) – *Attorneys for Plaintiffs-Appellants*

6.   Kennedys Law LLP (Daisy Khambatta and Candace A. Ourso) – *Attorneys for Defendant-Appellee*

7.   Schmoyer Reinhard LLP (Michael J. Ritter) – *Attorney for Defendant-Appellee*

Respectfully submitted,

/s/ Michael J. Ritter
Michael J. Ritter
Counsel for Defendant-Appellee

## **Statement Regarding Oral Argument**

Although Spheric Assurance Company, Limited ("Spheric") conditionally requests to participate should the Court set this case for oral argument, oral argument need not be permitted. The sole issue in this appeal is whether Texas public policy invalidates a foreign forum selection clause in a marine insurance policy. On May 1, 2023, this Court issued an opinion in *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London* squarely rejecting the precise arguments asserted in this appeal. No. 22-20281, 2023 WL 3168603, at *1 (5th Cir. May 1, 2023). After briefing and oral argument in *Noble House*, this Court stated:

> Tellingly, Noble House fails to cite a case where enforcement of a forum-selection clause contravened state public policy. . . . And when asked at oral argument if such a case existed, Noble House conceded that it was not aware of such a case. As the record stands, there is insufficient evidence that enforcement of the foreign forum-selection clause would contravene Texas public policy.

*Id.* at *5. Because the Court in *Noble House* fully vetted—and rejected—the precise arguments presented in the instant appeal, and noted the complete absence of any supporting authority, the minimal benefits of oral argument would not justify the time and expense required of the parties and the Court to prepare for oral argument. *See* 5TH CIR. R. 28.3(b).

## Table of Contents

Certificate of Interested Persons .................................................................... 2

Statement Regarding Oral Argument .............................................. 3

Statement of the Issue ............................................................................... 6

Statement of the Case ............................................................................... 7

    I.    In obtaining marine insurance from Spheric, Eads and Princess
Alia freely promised to litigate any coverage dispute in BVI ............................. 7

    II.    A coverage dispute arose after the vessel was destroyed by a fire
while docked in Mexico ............................................................... 8

    III.   Eads and Princess Alia sued Spheric in Texas; the district court dismissed the
suit without prejudice to refiling in BVI .............................................. 9

Summary of the Argument ...................................................... 10

Argument ............................................................................. 11

    I.    The sole issue in this appeal is whether the parties' freely-agreed, foreign forum
clause contravenes a strong public policy of the state of Texas .......................... 12

    II.    The parties' foreign forum selection clause does not violate a
strong public policy of the state of Texas ............................................... 15

        A. Fundamental public policy principles underlie the "strong
presumption" in favor of enforcing foreign forum selection clauses ............ 17

        B. A state's public policy cannot invalidate a foreign forum selection clause, if
at all, unless the public policy interest is fundamental ................................. 19

        C. Texas public policy is not fundamental as to forum selection
clauses unless it pertains directly to choice-of-forum concerns ................... 22

        D. Eads and Princess Alia cite no fundamental Texas public policy
interest that is so strong as to invalidate the parties' freely-agreed, foreign
forum selection clause ................................................................. 24

            *1. Article 21.42 does embody a fundamental public policy of the
state of Texas* ....................................................................... 25

            *2. Section 862.054 also does not embody a fundamental public
policy of the state of Texas* ................................................... 29

            *3. The district court did not err by failing to consider Eads and Princess
Alia's evidence that a BVI court would apply BVI law* ............................ 32

Conclusion .............................................................................. 38

## Index of Authorities

**Cases**

*Albany Ins. Co. v. Kieu*,
　927 F.2d 882 (5th Cir. 1991) ................................................................32

*Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*,
　529 F.3d 649 (5th Cir. 2008) ................................................................19

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
　571 U.S. 49 (2013) ................................................................................14

*AutoNation, Inc. v. Hatfield*,
　186 S.W.3d 576 (Tex. App.—Houston [14th Dist.] 2005, no pet.). ....... 31, 35, 40

*Barnett v. DynCorp Int'l, L.L.C.*,
　831 F.3d 296 (5th Cir. 2016) ........................................... 14, 17, 18, 37

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
　572 S.W.3d 213 (Tex. 2019) ................................................................26

*Boyd v. Grand Trunk W.R. Co.*,
　338 U.S. 263 (1949) ........................................................... 23, 24, 25

*Cardoni v. Prosperity Bank*,
　805 F.3d 573 (5th Cir. 2015) ....................................................... 41, 36

*DeSantis v. Wackenhut Corp.*,
　793 S.W.2d 670 (Tex. 1990) ................................................................18

*George v. SI Grp., Inc.*,
　36 F.4th 611 (5th Cir. 2022) ................................................................36

*Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*,
　47 F.4th 225 (3d Cir. 2022), *cert. granted in part*,
　143 S. Ct. 999 (2023). ...................................................... 23, 24

*Haynsworth v. The Corp.*,
　121 F.3d 956 (5th Cir. 1997) ......................................... 19, 20, 22, 29

*In re AIU Ins. Co.*,
　148 S.W.3d 109 (Tex. 2004) ................................................... passim

*In re ATP Oil & Gas Corp.*,
   531 B.R. 694 (Bankr. S.D. Tex. 2015) ..................................................30

*In re AutoNation, Inc.*,
   228 S.W.3d 663 (Tex. 2007)........................................................ 17, 38

*In re Boehme*,
   256 S.W.3d 878 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ....................19

*In re First Specialty Ins. Corp.*,
   No. 13-20-00122-CV, 2020 WL 2611269 (Tex. App.—Corpus Christi–Edinburg
   May 22, 2020, no pet.) ............................................................41

*In re Lloyd's Register N. Am., Inc.*,
   780 F.3d 283 (5th Cir. 2015) .....................................................19

*In re Longoria*,
   470 S.W.3d 616 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ....................41

*In re Lyon Financial Services, Inc.*,
   257 S.W.3d at 234 (2008)..................................................... passim

*In re Spillman Dev. Grp., Ltd.*,
   710 F.3d 299 (5th Cir. 2013) ............................................ 23, 24, 25

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)............................................................ passim

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*,
   642 S.W.3d 551 (Tex. 2022)........................................................39

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)...............................................................21

*Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*,
   No. 22-20281, 2023 WL 3168603 (5th Cir. May 1, 2023). ...................... passim

*PCL Civ. Constructors, Inc. v. Arch Ins. Co.*,
   979 F.3d 1070 (5th Cir. 2020) .................................................. 14, 15

*Prashant P. v. Liberty Life Assur. Co. of Boston*,
   No. 4:16-CV-1459, 2017 WL 10109450 (S.D. Tex. Feb. 22, 2017)...................29

*Puckett v. U.S. Fire Ins. Co.*,
    678 S.W.2d 936 (Tex. 1984)...................................................................33

*Santacruz v. Allstate Tex. Lloyd's, Inc.*,
    590 F. App'x 384 (5th Cir. 2014) ........................................................33

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974).................................................................... 20, 21

*Stellar Restoration Servs., LLC v. Courtney*,
    533 F. Supp. 3d 394 (E.D. Tex. 2021)...................................................39

*Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*,
    593 S.W.3d 324 (Tex. 2020)....................................................... 26, 27

*The M/S Bremen v. Zapata Off–Shore Co.*,
    407 U.S. 1 (1972).................................................................................20

*Theiler v. United Fin. Cas. Co.*,
    No. 4:22-CV-00924, 2023 WL 2898437 (S.D. Tex. Apr. 10, 2023). .................28

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
    348 U.S. 310 (1955) .............................................................................24

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 127.002(b).........................................................26

TEX. GOV'T CODE § 2254.110................................................................................27

TEX. INS. CODE § 21.42. ......................................................................... 28, 29

TEX. INS. CODE § 862.054 ......................................................................................32

**Rules**

TEX. R. CIV. P. 91 ..................................................................................................36

TEX. R. CIV. P. 91a ................................................................................................36

## **Statement of the Issue**

Is Texas's interest in applying its own insurance laws a fundamental public policy that is so strong as to invalidate a freely agreed foreign forum selection clause, contrary to countervailing state and federal interests in promoting freedom of contract and international comity and commerce?

**Statement of the Case**

This case concerns the enforceability of a freely-agreed, foreign forum selection clause[1] in a marine insurance contract. ROA.497-500. Ralph Eads, III and The Princess Alia L.L.C. insured a yacht under a marine insurance policy issued by Spheric, which is incorporated in the British Virgin Islands (BVI). ROA.57, 497-500. Eads and Princess Alia, residents of Texas, freely agreed to litigate any coverage dispute by filing suit in BVI.  ROA.61, 436. Eads and Princess Alia thereafter sued Spheric in Texas to obtain a more favorable forum and more favorable state law. ROA.11. Seeing through their forum shopping efforts, the district court granted Spheric's Rule 12(b)(6) motion and dismissed Eads and Princess Alia's suit without prejudice to refiling in BVI, as they had freely agreed. ROA.500.

## I.     In obtaining marine insurance from Spheric, Eads and Princess Alia freely promised to litigate any coverage dispute in BVI.

Eads is the sole member of Princess Alia, which owns a 62-foot catamaran. ROA.59. The vessel is Jamaican-flagged and has a home port of Cabo San Lucas, Mexico. ROA.59. Eads and Princess Alia obtained a marine insurance policy issued by Spheric in September 2021; the policy took effect the following month. ROA.59. The policy included a mandatory forum selection clause, which provides as follows:

---

[1] This brief uses the term "foreign forum selection clause" to refer to a forum selection clause that requires suit to be filed outside of the U.S. in a foreign country.

> This Contract shall be governed by and construed in accordance with the laws of the British Virgin Islands and each party agrees to submit to the exclusive jurisdiction of the Courts of the British Virgin Islands.

ROA.61. The parties exchanged other promises and made other representations and warranties in the policy. ROA.24-47.

## II.     A coverage dispute arose after the vessel was destroyed by a fire while docked in Mexico.

Among other promises and representations made in obtaining insurance coverage from Spheric, Eads and Princess Alia agreed to comply with several warranties in exchange for insurance coverage under the Policy. ROA.218. Less than two months after the policy became effective, the vessel was destroyed by a fire while docked in Mexico. ROA.126.

Eads and Princess Alia presented a claim to Spheric, asserting that the vessel, which was insured for $1,283,000, suffered a total loss. ROA.13, 16. Spheric denied payment on the claim, in part, due to Eads and Princess Alia's breaches of certain warranties in the Policy. ROA.48.

## III.    Eads and Princess Alia sued Spheric in Texas; the district court dismissed the suit without prejudice to refiling in BVI.

Eads and Princess Alia chose to litigate the coverage dispute by suing Spheric in Texas state court in Harris County. ROA.11. Eads and Princess Alia's principal cause of action was that Spheric breached the contractual promises it had made in

the marine insurance policy. ROA.16-21. Spheric removed the case to federal court based on diversity jurisdiction. ROA.5-8, 119-22.

Citing the parties' foreign forum selection clause, Spheric filed a Rule 12(b)(6) motion to dismiss the complaint for *forum non conveniens*. ROA.193. Eads and Princess Alia responded by arguing the forum selection clause violated the public policy of the state of Texas. ROA.389, 392-94. In responding to the Rule 12(b)(6) motion, Eads and Princess Alia submitted numerous declarations and other evidentiary exhibits. ROA.409-56. One of the exhibits contained a legal memo from Stuart Cullen, an attorney Eads and Princess Alia had hired in BVI to predict whether a BVI court would apply BVI law. ROA.451-45.

The district court concluded that the parties' foreign forum selection clause was enforceable. ROA.495-500. Citing precedent from the Texas Supreme Court, the district court rejected Eads and Princess Alia's argument that Texas has a strong public policy against the foreign forum selection clause to which they freely agreed. ROA.495-500. The district court granted Spheric's motion and dismissed the complaint without prejudice to the suit being refiled in BVI. ROA.501. This appeal followed. ROA.502.

## **Summary of the Argument**

This Court's recent decision in *Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*, is dispositive of the sole issue presented in this appeal. This appeal is limited to the singular issue of whether a freely-agreed, foreign forum selection clause in a marine insurance contract is unenforceable as contrary to a fundamental public policy of the state of Texas. Eads and Princess Alia argue that Texas has a strong public policy interest in: (1) applying its own insurance laws; and (2) protecting against "overbearing" practices by insurers who dispute coverage for technical violations. Both of these arguments were squarely rejected in *Noble House* because there was simply no authority supporting the insured's position. This case is no different.

Nevertheless, Eads and Princess Alia attempt to save their appeal by citing to a legal memo drafted by Stuart Cullen, a BVI lawyer they hired to opine on whether BVI courts would apply BVI law. They contend that the Cullen memo makes this case different from all of the others; cases in which this Court and the Texas Supreme Court have squarely and consistently rejected state public policy challenges to foreign forum selection clauses. There is simply no basis for federal courts, in determining the validity of a forum selection clause on a Rule 12(b)(6) motion, to entertain evidence-based predictions as to how courts in other forums might make future choice-of-law determinations and apply that law to the merits of the case.

## Argument

The framework for analyzing the enforceability of foreign forum selection clauses was recently set out in this Court's published decision in *Noble House*. *See* 2023 WL 3168603, at \*2. A foreign forum selection clause is generally enforceable through the doctrine of *forum non conveniens*, under which a district court may dismiss a case to be re-filed and adjudicated in the agreed-to forum. *Id.* (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013); *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020)). "Usually, a court applying th[e] doctrine must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum." *Id.* (quoting *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016)). But when, as here, the parties have contractually agreed to litigate their disputes in a pre-selected forum, the mandatory forum selection clause simplifies the usual *forum non conveniens* analysis. *See id.*

When presented with a foreign forum selection clause, courts begin with the "strong presumption" favoring the clause's enforcement. *Id.* Given this strong presumption, the forum selection clause controls the inquiry "in all but the most unusual cases." *Id.* (quoting *Atl. Marine*, 571 U.S. at 66; *Barnett*, 831 F.3d at 300). A party seeking to avoid the forum selection clause may overcome this strong

presumption only by a clear showing that the clause is unreasonable. *Id.* This Court has identified only four circumstances under which a forum selection clause may potentially be unreasonable:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching;

> (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum;

> (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or

> (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* A district court's determination of whether a forum selection clause is unreasonable is reviewed *de novo*. *Id.*

## I.     The sole issue in this appeal is whether the parties' freely-agreed, foreign forum clause contravenes a strong public policy of the state of Texas.

The Court's *de novo* review of a whether a foreign forum selection clause is unreasonable may be limited by appellate procedure. *See id.* at *6. Most notably, appellate review is limited to the issues raised and decided in the district court and further limited to the issues briefed on appeal. *See id.* (citing *PCL*, 979 F.3d at 1074). In the district court and on appeal, Eads and Princess Alia have argued that the parties' foreign forum selection clause is unenforceable for only one reason: that it

allegedly violated a strong public policy of the state of Texas. ROA.389, 392-94; ECF22 at viii.

Eads and Princess Alia's failure to challenge the reasonableness of the parties' foreign forum selection clause on any other ground leaves intact the "strong presumption" as to those grounds. *See Noble House*. *See* 2023 WL 3168603, at *2. First, the forum selection clause in Spheric's marine insurance policy was not the product of fraud or overreaching. *See id.* Second, BVI is not so gravely inconvenient or unfair so as to deprive Eads and Princess Alia of their day in court. *See id.* And third, the laws of BVI are not fundamentally unfair and will not deprive Eads and Princess Alia of the right to pursue any remedy. *See id.* Because Eads and Princess Alia have not challenged the forum selection clause on any of these grounds, the strong presumption in favor of the clause's reasonability is conclusive. *See id.* Consequently, Eads and Princess Alia bear the "heavy burden of proof" to establish that the parties' foreign forum selection clause contravenes a strong public policy of the state of Texas. *See id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 15, 18 (1972)).

While Eads and Princess Alia make numerous "choice of law" arguments in their opening brief, there is no choice of law issue in this appeal. Eads and Princess Alia contend that Texas law governs choice of law issues, whereas federal law governs the enforceability of forum selection clauses. ECF22 at 15-17; *see Barnett*,

831 F.3d at 301 ("[E]ven in diversity cases, federal law governs the 'enforceability' of forum-selection clauses in this circuit," and "federal law . . . heavily favors forum-selection clauses"). They also argue that Texas law governs the insurance policy. ECF22 at 17-21. These arguments are all red herrings because there is no choice of law issue before the Court and, alternatively, any choice of law issue need not be decided to determine whether the parties' foreign forum selection clause is enforceable. *See In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007) (orig. proceeding) (noting Texas courts have "decline[d] to superimpose the . . . choice-of-law analysis onto the law governing forum selection clauses").

None of the choice of law issues raised below were decided by the district court. The district court explained that it need not address any choice of law issue because the only question to answer was the following: "[W]ould application of [BVI] law contravene a fundamental public policy of the state of Texas?" ROA.498 n.2. On appeal, Eads and Princess Alia do not challenge the district court's decision not to resolve any disputed choice of law issues. Although Eads and Princess Alia brief several choice of law arguments, they present no arguments or authorities or specifically claim the district court erred by not addressing the choice of law issues.

Alternatively, the district court correctly determined that resolving any disputed choice of law issues was unnecessary to determine whether the foreign forum selection clause contravened a strong public policy of the state of Texas. *Id.*

The federal standard for determining the enforceability of a forum selection clause based on public policy necessarily requires considering the laws "of the forum state." ROA.497 (citing *Barnett*, 831 F.3d at 304). Indeed, the district court applied the laws of the forum state, Texas; specifically, the Texas statutes on which Eads and Princess Alia relied. ROA.498-500. Thus, the sole question presented in this appeal is not what law applies but whether the parties' foreign forum selection clause contravenes Texas public policy.[2]

## II.    The parties' foreign forum selection clause does not violate a strong public policy of the state of Texas.

The district court correctly rejected Eads and Princess Alia's argument that the Texas Insurance Code embodies a fundamental public policy sufficient to outweigh the countervailing state and federal interests. In *Noble House*, this Court recognized that there is not a single case in which any state or federal court has invalidated a forum selection clause on Texas public policy grounds. 2023 WL 3168603, at *5. This was after full briefing in the district court and on appeal, and even after oral argument. *Id.* Similarly, despite a response and sur-reply, Eads and

---

[2] Alternatively, Eads and Princess Alia failed to present any authority that Texas public policy could invalidate a choice of law provision in a marine insurance contract. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 680 (Tex. 1990) ("[T]he fact that the law of another state is materially different from the law of this state does not itself establish that application of the other state's law would offend the fundamental policy of Texas"). As explained below, the Supreme Court is poised to clarify that state public policy may not be used to invalidate a freely agreed choice of law provision in such insurance contracts.

Princess Alia were unable to cite any such cases in the district court. ROA.384-456, 474-81. They failed similarly in their opening brief on appeal. There is only authority to the contrary; when this Court has squarely rejected contentions that Texas public policy invalidated freely-agreed, forum selection clauses. *See Noble House*, 2023 WL 3168603, at *5; *see also Barnett*, 831 F.3d at 300  ("Barnett has failed to show that enforcement of the forum-selection clause is unreasonable because it would contravene a strong forum-state policy."); *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015) ("Pearl Seas fails to show why this is the exceptional case in which a valid forum-selection clause should not be enforced.").

As to domestic forum selection clauses, the recurring challenge for parties challenigng such clauses is that, in Texas, freedom of contract and discouraging forum shopping are also fundamental public policies of the state. *Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d 649, 662 (5th Cir. 2008); *In re Boehme*, 256 S.W.3d 878, 882 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (orig. proceeding). It is therefore insufficient for a plaintiff to merely identify any general public policy concern in the state of Texas that is potentially at odds with enforcing the forum selection clause. *See Am. Int'l Specialty Lines*, 529 F.3d at 662. Instead, the governing standard requires considering the "reasonableness" of a forum selection clause; and reasonableness inquiries often require balancing competing considerations. *See Haynsworth*, 121 F.3d at 963. This Court has therefore required

18

a clear showing that: (1) Texas has a fundamental public policy; and (2) the public policy so strong that it clearly outweighs competing fundamental public policy interests—such as freedom of contract and avoiding forum shopping—that favor the enforcement of forum selection clauses. *See id.* This challenge is even greater when—as here and in *Noble House*—the clause is a foreign forum selection clause that implicates strong, countervailing state and federal interests. *See* 2023 WL 3168603, at *5.

A. Fundamental public policy principles underlie the "strong presumption" in favor of enforcing foreign forum selection clauses.

Important public policy considerations underlie the strong presumption favoring enforcing foreign forum selection clauses. *Noble House*, 2023 WL 3168603, at *2. This strong presumption, established by the U.S. Supreme Court in *Bremen* and *Scherk*, can only be overcome by a clear showing that the foreign forum selection clause is unenforceable. *See The M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972); *Haynsworth v. The Corp.*, 121 F.3d 956, 966 (5th Cir. 1997) (discussing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974)). The "clear showing" that is required to set aside an otherwise-valid forum selection clause must be assessed in light of the public policy concerns underlying the strong presumption in favor of enforcing such clauses, particularly in international business contracts. *Haynsworth*, 121 F.3d at 963.

19

"Public policy weighs strongly in favor of *The Bremen*'s presumption, because uncertainty as to the forum for disputes and applicable law will almost inevitably exist with respect to any contract touching two or more countries." *Id.* (quotation marks omitted). "That is, the elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *Id.* (cleaned up). "[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985).

Enforcing foreign forum selection clauses directly advance these important interests. *See id.* "A contractual provision specifying in advance the forum in which disputes shall be litigated . . . is . . . an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction" *Id.* (quotation marks omitted). "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." *Id.* (quoting *Scherk*, 407 U.S., at 9). "We cannot have

trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts." *Id.* Federal courts thus follow the Supreme Court's directive to enforce foreign forum selection clauses "in the interests of international comity and out of deference to the integrity and proficiency of foreign courts." *Haynsworth*, 121 F.3d at 962.

B.  <u>A state's public policy cannot invalidate a foreign forum selection clause, if at all, unless the public policy interest is fundamental.</u>

The Supreme Court has never held that a state's public policy interest, no matter how strong or fundamental, could invalidate a foreign forum selection clause in an international commercial agreement. The notion that such clauses might be unenforceable on state public policy grounds emanates from following sentence in *Bremen*, "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of ***the forum*** in which suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15 (emphasis added). In *Bremen*, the Supreme Court upheld a foreign forum selection clause agreed to "between a German and an American corporation for towage of a vessel from the Gulf of Mexico to the Adriatic Sea." *Id.* at 17.

Notably, in acknowledging that a foreign forum selection clause could be unenforceable on public policy grounds, the Supreme Court used the term "the forum," not "forum state," as is often used in cases considering the validity of domestic forum selection clauses. *Id.* at 15; *e.g.*, *Haynsworth*, 121 F.3d at 963. The

only cased cited by the Supreme Court as to this statement was *Boyd v. Grand Trunk W.R. Co.*, 338 U.S. 263 (1949) (per curiam). In *Boyd*, the Supreme Court addressed a domestic forum selection clause requiring a workplace injury suit to be filed in a different state than where the injury occurred. *Id.* Addressing a split in authority, the Supreme Court held that the forum selection clause violated the employee's federally codified right to bring suit in different district courts under the Federal Employers' Liability Act. *Id.* Viewed in context, *Bremen*'s reference to the public policy of the "forum" was a reference to the public policy not of an individual state, but of the United States. *See id.*; *see also In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (forum selection clause held invalid on federal public policy grounds). Thus, *Bremen* does not actually lend support to the notion that a foreign forum selection clause—supported by strong countervailing state and federal interests—may be invalidated solely based on a state's public policy concerns.

The Supreme Court is poised to clarify *Bremen* accordingly in its next term. In a decision that turned on a procedural technicality, the Third Circuit remanded a case solely for the district court to consider whether or not a foreign forum selection clause in a marine insurance contract was unenforceable due to the public policy of the state of Pennsylvania. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 47 F.4th 225 (3d Cir. 2022), *cert. granted in part*, 143 S. Ct. 999 (2023). The Third Circuit's decision did not hold that state public policy did, in fact, render a foreign

forum selection clause unenforceable; it merely recognized such possibility. *See id.* Although the petition for certiorari raised two issues, the Supreme Court granted review solely on the second issue: "Under federal admiralty law, can a choice of law clause in a maritime contract be rendered unenforceable if enforcement is contrary to the 'strong public policy' of the state whose law is displaced?" *See Great Lakes*, 143 S. Ct. 999; Petition for Writ of Cert. at ii. *Great Lakes* is the first marine insurance case that the Supreme Court has accepted since 1955. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955). The Supreme Court thus appears poised to totally dispense with the notion that a state law's public policy—even if strong and fundamental to the state—could supersede federal interests in promoting international commerce and comity.

Domestic forum selection clauses are occasionally invalidated on federal public policy grounds. *See Boyd*, 338 U.S. at 263; *Spillman*, 710 F.3d at 306. These decisions require that, to make the clear showing necessary to overcome the strong presumption in favor of forum selection clauses, the public policy interest be so strong that it clearly outweighs the countervailing public policy interests in freedom of contract in interstate commercial contracts. *See Boyd*, 338 U.S. at 263; *Spillman*, 710 F.3d at 306. The mere existence of any potentially conflicting public policy concern is insufficient to make this strong showing as to domestic forum selection

clauses. Even if the same principles did—in fact—apply to foreign forum selection clauses, the state's public policy must be fundamental to the state.

C. Texas public policy is not fundamental as to forum selection clauses unless the concern pertains directly to choice-of-forum concerns.

When a state's public policy is invoked to invalidate a freely agreed forum selection clause, public policy will not invalidate the parties' agreed choice of forum unless the public policy directly concerns the parties' choice of forum. In the cases in which courts have invalidated domestic forum selection clauses on public policy grounds, the state has "declared by statute or by judicial decision" such a concern about parties' choice of forum. *Bremen*, 407 U.S. at 15; *accord Boyd*, 338 U.S. at 263 (public policy declared by federal venue statute); *Spillman*, 710 F.3d at 306 (public policy declared by judicial decision, noting "the importance of the federal bankruptcy forum provided by the [Bankruptcy] Code is at its zenith"). Conversely, courts have rejected parties' attempts to avoid freely-agreed, forum selection clauses by citing public policy concerns expressed in statutes and decisions that do not directly relate to concerns about the choice of forum. *See, e.g.*, *Noble House*, 2023 WL 3168603, at *5; *In re AIU Ins. Co.*, 148 S.W.3d 109, 114 (Tex. 2004) (orig. proceeding) ("[W]e need not decide the extent to which article 21.42 or former article 21.43, section 9 govern the insurance contract at issue. Neither requires suit to be brought or maintained in Texas.").

This distinction is consistent with how Texas courts analyze statute-based public policy considerations. Texas courts generally defer to parties' freedom of contract, which is itself a strong public policy of the state. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 230 (Tex. 2019) ("We have long recognized the strongly embedded public policy favoring freedom of contract."). In analyzing whether a contractual provision contravenes a public policy embodied in a Texas statute,[3] Texas courts will ascertain the Texas Legislature's intent based on the plain meaning of words used in the statute. *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 339 (Tex. 2020) ("Simply put, when the legislature has spoken on the topic, we generally consider its statutory enactments to be expressions of public policy."); *see Lyon Fin.*, 257 S.W.3d at 234 ("[A]bsent a Texas statute requiring suit to be brought in Texas, the existence of Texas statutory law in an area [does] not establish such Texas public policy as would negate a contractual forum-selection provision.").

The Texas Legislature is well-aware of how to make express declarations of public policy by statute. *E.g.*, TEX. CIV. PRAC. & REM. CODE § 127.002(b) ("Certain agreements that provide for indemnification of a negligent indemnitee are against

---

[3] Under *Bremen*, a forum's public policy may be "declared by statute or by judicial decision." 407 U.S. at 15. Eads and Princess Alia only argue public policy based on Texas statutes. They do not argue any public policy from judicial decisions or the common law.

the public policy of this state."); TEX. GOV'T CODE § 2254.110 ("A contract entered into or an arrangement made in violation of this subchapter is void as against public policy."). When, as here, the statutory provisions at issue are cited for an implied public policy, Texas courts generally refrain from judicially grafting additional public policy declarations into legislative enactments beyond the plain language of the statute. *See Teal Trading*, 593 S.W.3d at 339. In short, an otherwise valid forum selection clause will generally not violate any public policy based on a Texas statute unless the statute expressly or necessarily speaks to a concern about parties' choice of forum. *See Lyon Fin.*, 257 S.W.3d at 234.

D. Eads and Princess Alia cite no fundamental Texas public policy interest that is so strong as to invalidate the parties' freely-agreed, foreign forum selection clause.

Eads and Princess Alia make two arguments as to why the parties' foreign forum selection clause violates Texas public policy. Both arguments stem from Eads and Princess Alia's contention "that if this case is filed in the BVI, as required under the district court's ruling, the BVI court will apply BVI law." ECF22 at 21-22 (citing the Cullen memo). Eads and Princess Alia ague that if a BVI court applies BVI law, then: (1) Texas law will not be applied to the suit, and Texas has a public policy interest in applying its insurance laws to its residents under Article 21.42 of the Texas Insurance Code; and (2) they will be unable to benefit from Section 862.054 of the Texas Insurance Code, which prohibits insurers from denying coverage based

on purely technical policy violations that did not contribute to the loss. ECF22 at 21-22. Both arguments lack merit.

> 1. *Article 21.42 does embody a fundamental public policy of the state of Texas.*

Eads and Princess Alia posit that Article 21.42 of the Texas Insurance Code embodies Texas's public policy that Texas law should apply to insurance payable to Texas residents. Article 21.42 provides as follows:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX. INS. CODE art. 21.42. Given extraterritoriality concerns, "[t]he Texas Supreme Court has interpreted this provision narrowly." *Theiler v. United Fin. Cas. Co.*, No. 4:22-CV-00924, 2023 WL 2898437, at *2 (S.D. Tex. Apr. 10, 2023).

As an initial matter, other than Section 862.054, Eads and Princess Alia have not explained how Texas insurance law differs from BVI insurance law. Although Eads and Princess Alia present Article 21.42 as a separate and independent source of public policy, their Article 21.42 arguments are part and parcel of their arguments under Section 862.054. To illustrate, if Texas law and BVI law are virtually identical in all respects except for Section 862.054, then there is no basis to claim that Texas

has a strong and fundamental public policy in applying any of its own laws over BVI's laws, other than Section 862.054.

Nevertheless, this Court has squarely rejected Eads and Princess Alia's first argument. In *Noble House*, the insured argued that "'Texas has a strong public policy of regulating insurance' because . . . there is a statute providing that insurance contracts sold to citizens or inhabitants of Texas are governed by Texas law, TEX. INS. CODE § 21.42." *Noble House* 2023 WL 3168603, at *5. This Court noted the significant federal interests of promoting freedom of contract in international commercial agreements. *Id.* (citing *Bremen*, 407 U.S. at 9, *Haynsworth*, 121 F.3d at 962). The Court then concluded that, given the complete absence of any authority showing Article 21.42 could invalidate a freely-agreed, foreign forum selection clause, the insured failed to make a clear showing that the foreign forum selection clause was unenforceable based on Texas public policy. *Id.*

Like the insured in *Noble House*, Eads and Princess Alia have not cited any authority that Article 21.42 could invalidate a foreign forum selection clause, or any domestic forum selection clause for that matter. Eads and Princess Alia have cited four cases that address Article 21.42, none of which invalidated a forum selection clause. Three of the cited cases did not address the validity of a forum selection clause at all. *See Prashant P. v. Liberty Life Assur. Co. of Boston*, No. 4:16-CV-1459, 2017 WL 10109450, at *2 (S.D. Tex. Feb. 22, 2017) (analyzing enforceability

of choice of law provision under Article 21.42); *In re ATP Oil & Gas Corp.*, 531 B.R. 694, 702 (Bankr. S.D. Tex. 2015) (same); *Am. Home Assur. Co. v. Safway Steel Prods. Co.*, 743 S.W.2d 693, 697 (Tex. App.—Austin 1987, writ denied) (applying Article 21.42 to resolve a choice of law issue raised on appeal).

The fourth case cited by Eads and Princess Alia is a decision by the Texas Supreme Court that, like this Court's decision in *Noble Home*, squarely rejects Eads and Princess Alia's argument. *See AIU*, 148 S.W.3d at 112. In *AIU*, the insured made the exact argument under Article 21.42 that Eads and Princess Alia make in this appeal:

> Dreyfus contends that the forum-selection clause in its policy should not be enforced [under] *Bremen*, [in which] the Supreme Court held that a "forum clause should control absent a strong showing that it should be set aside . . . if enforcement would be unreasonable . . . . Dreyfus contends that . . . article 21.42 . . . of the Texas Insurance Code appl[ies] and require[s] that Texas law governs, . . . [and] that Texas has a strong public interest in having the coverage issues litigated in Texas . . . . We reject each of these contentions.

*Id.* (footnote omitted). The Texas Supreme Court summarily rejected the insured's argument under Article 21.42 because the provision simply did not "require[] suit to be brought or maintained in Texas." *Id.* at 114.[4]

---

[4] Eads and Princess Alia attempt to distinguish *AIU* on the sole ground that the insured did not "argue that enforcement of the forum-selection clause would result in the application of foreign law in a manner that contravenes the public policy of Texas." ECF22 at 26. This argument is addressed below.

In *In re AutoNation*, the Texas Supreme Court also rejected the argument that a forum selection clause violates Texas public policy merely because enforcing the clause would result in the application of another state's laws. 228 S.W.3d 663, 670 (Tex. 2007) (orig. proceeding). The intermediate court of appeals in *AutoNation* had previously affirmed a temporary anti-suit injunction. *See AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 580 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In a footnote, the court of appeals stated that the forum selection clause was unenforceable on public policy grounds because there was a "showing that Florida would apply Florida [law] rather than Texas law." *Id.* at n.3. The Texas Supreme Court disapproved of the lower court's decision and held that the trial court abused its discretion by not dismissing the case based on the forum selection clause. *See AutoNation*, 228 S.W.3d at 669. The court reasoned that the mere application of another state's laws in another state's court is not a fundamental public policy concern of Texas. *See id.*

As the Texas Supreme Court confirmed in *AIU* and *AutoNation*, Article 21.42 does not embody a fundamental public policy of the state of Texas that is so strong as to invalidate a freely-agreed, forum selection clause. *See id.* To the extent Article 21.42 embodies a public policy, the public policy concern is one of general consumer protection and is wholly unrelated to any specific concern as to parties' choice of forum. *See AIU*, 148 S.W.3d at 114. Article 21.42 simply has nothing to do with

where a suit is filed or maintained and, as such, contains no fundamental public policy concern that is so strong as to invalidate a freely-agreed forum selection clause. *See id.*

>    2. *Section 862.054 also does not embody a fundamental public policy of the state of Texas.*

Eads and Princess Alia also contend that the public policy concern implied by Section 862.054 of the Texas Insurance Code invalidates the parties' foreign forum selection clause. Section 862.054 provides:

>    Unless the breach or violation contributed to cause the destruction of the property, a breach or violation by the insured of a warranty, condition, or provision of a fire insurance policy or contract of insurance on personal property, or of an application for the policy or contract: (1) does not render the policy or contract void; and (2) is not a defense to a suit for loss.

TEX. INS. CODE § 862.054. Eads and Princess Alia argue that under BVI law, an insured's breach of the insurance policy could be a defense in an insurance coverage dispute, even if the breach did not contribute to the cause of the loss. They contend that Section 862.054 embodies a public policy to protect Texans "against the overbearing tactics of insurance underwriters." ECF22 at 22 (quoting *Albany Ins. Co. v. Kieu*, 927 F.2d 882, 891 (5th Cir. 1991)

This Court recently rejected this exact argument in *Noble House*, 2023 WL 3168603, at *5. The insured in *Noble House* argued that a foreign forum selection clause in a marine insurance contract contravened Texas public policy to protect

Texans against "overbearing tactics of insurance underwriters." *Id.* As with the insured's public policy argument under Article 21.42 in *Noble House*, this Court rejected the insured's argument that a forum selection clause contravened Texas public policy merely because enforcement might result in the application of laws more favorable to the insurer. *See id.* This Court noted the complete absence of any authority supporting the insured's position that a state's public policy could invalidate a foreign forum selection clause. *See id.*

Here, again, Eads and Princess Alia can cite no authority that Section 862.054 embodies a fundamental public policy that is so strong that it invalidates a foreign forum selection clause. The two cases they cite do not involve the validity of a forum selection clause under Section 862.054. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984) (holding contract provision permitting denial of coverage for harmless technical reasons violated public policy under Section 862.054); *see also Santacruz v. Allstate Tex. Lloyd's, Inc.*, 590 F. App'x 384, 387 (5th Cir. 2014) (suggesting the same would be true). Like Article 21.42, Section 862.054 is wholly unrelated to any forum concerns and simply does not "require[] suit to be brought or maintained in Texas." *Cf. AIU Ins. Co.*, 148 S.W.3d at 114.

Eads and Princess Alia's argument under Section 862.054 is a mere iteration of the common, self-serving position taken by a party who is seeking to avoid a freely-agreed, forum selection clause. The familiar argument typically proceed as

follows: (1) the party first identifies favorable laws of a forum other than the one agreed to in a forum selection clause, and files suit in that forum; (2) in response to a *forum non conveniens* argument based on the freely agreed forum selection clause, the party then argues that the forum's favorable laws embody a "strong" public policy of the state; (3) the party then proceeds to argue that, if it is forced to refile in the agreed-to forum, the other court is more likely to apply less favorable laws; and (4) effectuating a change in the substantive law via the forum selection clause contravenes a fundamental public policy of chosen forum, thereby rendering the forum selection clause unenforceable. *Compare* ROA.11, 389-94; *with Noble House*, 2023 WL 3168603, at *5.

This position has often been taken by parties seeking to avoid the choices they freely made in agreeing to a forum selection clause, and merely attempts to justify forum shopping efforts under the guise of state public policy concerns. However, federal courts in this circuit, as well as Texas courts, have also recognized a strong public policy against forum shopping. Recognizing such forum shopping efforts for what they are, courts routinely reject the argument that a forum selection clause is contrary to the forum's public policy, even when the agreed-to forum would apply less favorable laws that might entirely bar the plaintiff from recovering. *See Noble House*, 2023 WL 3168603, at *5; *Lyon Fin.*, 257 S.W.3d at 234. This case is no different, and the outcome should be no different. Even if filing suit in BVI would

result in the application of a BVI law that is less favorable law than Section 862.054—and even if the difference in the law would be outcome-determinative— the parties' foreign forum selection clause is not unenforceable under any public policy of the state of Texas.

3. *The district court did not err by failing to consider Eads and Princess Alia's evidence that a BVI court would apply BVI law.*

Eads and Princess Alia argue that the district court erred by failing "to consider the undisputed evidence showing that if the forum-selection clause is enforced, it will result in an application of foreign law in a manner that contravenes Texas public policy." ECF22 at 14. The "undisputed evidence" to which they refer is the Cullen memo opining that, had Eads and Princess Alia filed suit in BVI, a BVI court would apply BVI law. ROA.454-56. Although the Texas Supreme Court held in *AIU* that another forum's likely application of its own laws would not invalidate a forum selection clause on public policy grounds, Eads and Princess Alia contend that the Texas Supreme Court recognized an exception in *Lyon Financial*, 257 S.W.3d at 234–35, which they say "effectively endorsed" Justice Harriet O'Neill concurrence in *AutoNation*, 228 S.W.3d at 671 (O'Neill, J., concurring). These arguments seek to establish that: (1) a party may submit evidence that predicts what law a foreign court would apply; and (2) thereby convert a forum selection clause analysis into a choice of law analysis.

These arguments lack merit for numerous reasons, most of which stem from the differences between state and federal procedure and from Eads and Princess Alia's attempt to conflate forum selection issues with choice of law issues. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015) (explaining the difference between forum selection and choice of law issues). First, this appeal arises from the district court's grant of a Rule 12(b)(6) motion to dismiss. ROA.191, 500; *see* FED. R. CIV. P. 12(b)(6). Such motions are based on the pleadings. *See George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) ("going beyond the pleadings is otherwise error"). The consideration of evidence is generally inappropriate on a Rule 12(b)(6) motion. *Id.* Conversely, although the Texas Legislature created a procedure for pleadings-based motions to dismiss in 2011, *see* TEX. R. CIV. P. 91a cmt., both *Lyon Financial* and *AutoNation* were decided before 2011. In those cases, there was no "motion to dismiss" procedure in Texas that was strictly based on pleadings only.[5] Although Texas state court rules may have be more procedurally flexible, the district court—which correctly applied federal procedural standards—did not err by failing to consider the evidence submitted in response to the Rule 12(b)(6) motion.

Second, in *Lyon Financial*, the Texas Supreme Court applied state procedural rules to determine the enforceability of a forum selection clause. 257 S.W.3d at 232

---

[5] The only pleadings-based procedure for dismissal was generally through the filing of special exceptions that, when identified defects were not cured, might result in a dismissal of the suit. *See* TEX. R. CIV. P. 91.

(citing *AIU*, 148 S.W.3d at 112, which adopted *Bremen* as state law). Here, however, as Eads and Princess Alia have admitted—and expressly argued—"Federal law governs the enforceability of the forum-selection clause," even in diversity cases. ECF22 at 16; *Barnett*, 831 F.3d at 301. In other words, although Texas courts apply a similar procedural framework to analyze whether a forum selection clause is enforceable, and apply Texas substantive law to determine public policy considerations, Texas courts' application of the federal analytical framework is not binding on this Court. To the extent *Lyon Financial* suggests that a party can submit evidence to convert a forum selection issue into a choice of law issue, *Lyon Financial* is valuable only to the extent it is persuasive, which dovetails into the next point.

Third, *Lyon Financial* lends no support to Eads and Princess Alia's position. Eads and Princess Alia rely first on Justice O'Neill's *AutoNation* concurrence, in which she suggested her opinion "might" change if a party could show that a court in the agreed-to forum would apply that forum's law instead of Texas law:

> [D]eciding which noncompete agreements constitute reasonable restraints of trade on employees in this state is a matter of fundamental Texas public policy. What is not apparent, however, is that enforcement of the forum-selection clause in this case will result in application of the contractual forum's law in a manner that will undermine Texas public policy. ***Had there been a clear showing to this effect, I <u>might</u> agree with the court of appeals' analysis***, or at least would consider the trial court justified had it decided to abate the Texas declaratory judgment action pending the Florida court's decision.

228 S.W.3d at 671 (O'Neil, J., concurring). Although Eads and Princess Alia argue that the Texas Supreme Court "effectively endorsed" this position in *Lyon Financial*, the court reaffirmed the *AutoNation* majority's holding that, unless a Texas statute specifically requires a particular forum, there is no public policy in Texas that will render a forum selection clause unenforceable. *See id.* The court then added (likely unnecessarily) that there was no showing that the chosen forum would actually apply different law in a way that violated Texas public policy. *Id.* Eads and Princess Alia's position cannot be squared with the actual holdings of *Lyon Financial* and *AutoNation*, which is "that absent a Texas statute requiring suit to be brought in Texas, the existence of Texas statutory law in an area did not establish such Texas public policy as would negate a contractual forum-selection provision." *Lyon Fin.*, 257 S.W.3d at 234. Quite simply, neither *Lyon Financial* nor the *AutoNation* concurrence support that a forum selection clause *would* be unenforceable if a party had shown—with evidence—that the agreed-to forum would apply other laws contrary to Texas's public policy.

Fourth, Eads and Princess Alia misapprehend what a "clear showing" means when referring to public policy reasons for invalidating a forum selection clause. The "showing" required will depend on which of circumstances are alleged: (1) fraud or overreaching; (2) inconvenience or unfairness resulting in deprivation of day in court; (3) fundamental unfairness depriving a remedy; or (4) public policy.

*See Noble House*, 2023 WL 3168603, at *2. Certain challenges to a forum selection clause, like fraud or inconvenience, require evidence in the traditional sense. *See id.* Other challenges, such as those based on public policy, are decided as a matter of law. *See id.* Correspondingly, the standard of appellate review for evidence-based decisions is one for abuse of discretion. *See id.* at *1. And the standard of appellate review for questions of law, such as a state's public policy, is a question of law that is reviewed de novo (meaning the issue is not one to be resolved through disputed evidence). *Id.* at *1. Whether a state has a strong public policy under *Bremen* requires considering what the state has "declared by statute or by judicial decision." 407 U.S. at 15. And applications of statutes and judicial decisions to undisputed facts—i.e. the plain language of a forum selection clause—raise a questions of law that are reviewed de novo. *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 557 (Tex. 2022). Thus, in context of public policy challenges to forum selection clauses, the "showing" requires citing authority, not evidence. *See Noble House*, 2023 WL 3168603, at *2.

Fifth, even if Eads and Princess Alia could seek to prove their public policy challenge with evidence, they still failed to meet their burden to prove that enforcing the parties' foreign forum selection clause would actually contravene Texas public policy by being outcome-determinative. *See Stellar Restoration Servs., LLC v. Courtney*, 533 F. Supp. 3d 394, 421 (E.D. Tex. 2021) (rejecting public policy

argument because application of other law was not shown to be outcome determinative). According to Justice O'Neill's concurrence, there was no showing that enforcing "the forum-selection clause in this case will result in application of the contractual forum's law *in a manner that will undermine Texas public policy*." *See AutoNation*, 228 S.W.3d at 671 (O'Neil, J., concurring) (emphasis added).

The Cullen memo merely opines that a BVI court would likely apply BVI law; it does not address whether the application of BVI law would actually be applied in an outcome-determinative way that would undermine any public policy embodied in Texas's insurance laws. ROA.454-56. If BVI law and Texas law would result in the same outcome, the mere possibility that BVI law would be applied does not show an actual contravention of Texas's public policy. The Cullen memo does not: (1) provide any indication about how the fire started; and (2) rule out that Eads and Princess Alia's violations of the insurance policy as contributors to the cause of the loss. *See id.* Thus, Eads and Princess Alia failed to develop a record showing that, even if Texas's anti-technicality statute applied, the outcome would be any different than if BVI law were applied. So, to the extent Eads and Princess Alia had an evidentiary burden to prove their public policy challenge, they failed to meet that burden.

Finally, even if Eads and Princess Alia could conclusively establish through the Cullen memo that the forum selection clause would result in the application of

BVI law, and application of BVI would be outcome-determinative, the forum selection clause would remain enforceable. *See Cardoni*, 805 F.3d at 587 ("More is needed as choice of law is going to be outcome determinative any time the parties are debating it."); *In re First Specialty Ins. Corp.*, No. 13-20-00122-CV, 2020 WL 2611269, at *8 (Tex. App.—Corpus Christi–Edinburg May 22, 2020, no pet.) (orig. proceeding) ("[T]he supreme court has held that the inability to assert a claim recognized by Texas law in another state 'does not create a public policy reason to deny enforcement of the forum-selection clause'") (quoting *Lyon Fin.*, 257 S.W.3d at 234); *In re Longoria*, 470 S.W.3d 616, 633 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Not being able to bring certain causes of action in the designated forum is not a reason to avoid enforcement of a forum-selection clause."). These cases establish and apply these principles to domestic clauses that merely require litigation in another state. Considering the strong state and federal interests in international comity and commerce in enforcing foreign forum selection clauses, these principles apply with even more force when requiring litigation in another country.

## Conclusion

Spheric respectfully requests that the Court affirm the district court's judgment, award Spheric its costs and attorney's fees, and award Spheric all other relief to which it has shown itself entitled.

Respectfully submitted,

/s/ *Michael J. Ritter*

Michael J. Ritter
Texas State Bar No. 24074960
mritter@sr-llp.com
SCHMOYER REINHARD LLP
8000 IH 10 West, Ste. 1600
San Antonio, Texas 78257
Telephone: (210) 447-8033
Facsimile: (210) 447-8036

Daisy Khambatta
Texas Bar No. 24029654
daisy.khambatta@kennedyslaw.com
Candace A. Ourso
Texas Bar No. 24008952
candace.ourso@kennedyslaw.com
KENNEDYS, CMK LLP
3821 Juniper Trace, Suite 101
Austin, Texas 78738
T: (512) 359-8821
F: (512) 359-8830

*Counsel for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served it accordingly upon the following counsel of record:

J. Stephen Barrick
Texas Bar No. 00796168
sbarrick@hicks-thomas.com

Gregg C. Laswell
Texas Bar No. 11971500
glaswell@hicks-thomas.com

Liz Larsen
Texas Bar No. 24076950
llarson@hicks-thomas.com

HICKS THOMAS LLP
700 Louisiana St., Suite 2300
Houston, Texas 77002
(713) 547-9100

on Friday, May 19, 2023.

/s/ Michael J. Ritter
Michael J. Ritter
*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements,
### And Type Style Requirements

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and 5th Cir. R. 32.3.

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

     [x]    this brief contains <u>8,151</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

     [ ]    this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B) (iii)

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     [x]    this brief has been prepared in a proportionally spaced typeface using WORD in 14-point Times New Roman type style, or

     [ ]    this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Certified on May 19, 2023.

Respectfully submitted,

/s/ Michael J. Ritter
**Michael J. Ritter**
Counsel for Defendant-Appellee